UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENVILLE

| LUIS F. SANCHEZ, JR., | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Nos. 2:06-CR-67-JRG |
| | ) | 2:16-CV-200-JRG |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION**

Before the Court is Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 51]. Petitioner bases his request on the United States Supreme Court decisions in *Johnson v. United States*, 135 S. Ct. 2551 (2015) and *Mathis v. United States*, 136 S. Ct. 2243 (2016) [*Id.*; Doc. 53].[1] Respondent agrees Petitioner is entitled to relief [Doc. 56]. The motion [Doc. 51] will be **GRANTED.**

**I.    BACKGROUND**

In 2007, Petitioner pled guilty to possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) [Doc. 23]. In his plea agreement, Petitioner "knowingly and voluntarily agree[d] to waive any rights he m[ight] have [had] to file any post-conviction motions or pleadings pursuant to [28 U.S.C. § 2255]," with the sole exception of petitions raising claims of "ineffective assistance of counsel or prosecutorial misconduct" [*Id.* ¶ 7].

---

[1] On February 11, 2016, Federal Defender Services of Eastern Tennessee ("FDSET") was appointed for the limited purpose of reviewing the case to determine whether or not Petitioner is eligible for collateral relief based on *Johnson*. *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). Consistent with that appointment, FDSET filed a supplement in support of Petitioner's request for collateral relief on July 12, 2016 [Doc. 53].

In Petitioner's Presentence Investigation Report ("PSR"), the United States Probation Office deemed him to be an armed career criminal subject to an enhanced fifteen year statutory sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), based on two prior New Jersey convictions for third-degree burglary and one prior Pennsylvania conviction for burglary [PSR ¶¶ 41, 42, 44]. The Court agreed [Doc. 46]. As a result of the United States's request for a downward departure pursuant to 18 U.S.C. § 3553(e) [Doc. 30], the Court sentenced Petitioner to 156 months' imprisonment followed by five years' supervised release [Doc. 48].

Petitioner did not appeal his conviction or sentence, and the judgment became final on September 4, 2007. *See Sanchez Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (explaining an unappealed judgment of conviction becomes final when the time for filing a direct appeal has elapsed); Fed. R. App. Proc. 4(b)(1)(A)(i)("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after . . . the entry of . . . judgment.").

Over eight and one-half years later—on June 23, 2016—Petitioner filed a § 2255 petition in which he alleged that he was no longer an armed career criminal in light of *Johnson* [Doc. 51]. On July 12, 2016, FDSET filed a supplement in support of collateral relief [Doc. 53]. In that supplement, FDSET argues that the ACCA designation is invalid under *Mathis* [*Id.*]. The United States urges the Court to grant immediate release and amend the judgment to reflect an appropriate term of supervised release [Doc. 56].[2]

---

[2] Section 2255(f) places a one-year statute of limitations on all petitions for collateral relief under § 2255 running from either: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized

2

## II. STANDARD OF REVIEW AND ANALYSIS

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

## III. ANALYSIS

---

by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

The United States waives reliance on the statute of limitations [Doc. 56 pp. 3–4]. As a result, the Court finds that it need not address whether the instant petition—which relies on *Mathis* and argues that the Court erred when it categorized Petitioner's prior New Jersey third-degree burglary convictions as predicate offense under the enumerate offense clause—"asserts" the right newly recognized in *Johnson*, i.e., triggers a renewed filing widow under § 2255(f)(3). *See Scott v. Collins*, 286 F.3d 923, 927–28 (6th Cir. 2002) (failure to comply with statute of limitation is an affirmative defense, which can be waived); *see also Wood v. Milyard*, 132 S. Ct. 1826, 1835 (2012) (holding that deliberate decision to contest the timeliness of a petitioner's habeas petition "after expressing its clear and accurate understanding of the timeliness issue" constituted a deliberate waiver); *Day v. McDonough*, 547 U.S. 198, 210 n.11 (2006) ("Should [the United States] intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice.").

The Court similarly finds that it need not address whether the waiver contained in Petitioner's plea agreement is enforceable, *see, e.g.*, *United States v. Thompson*, No. 3:06-cr-56, 2008 WL 6506506, at *8, 14 (W.D. Ky. Nov. 7, 2008) (explaining knowing and voluntary waivers are enforceable so long as they do not result in a miscarriage of justice), because the United States waives reliance on that affirmative defense as well [Doc. 56 p. 4 ("[I]n the interests of justice, the United States . . . waive[s] reliance on . . . the § 2255 waiver in [P]etitioner's plea agreement.")].

3

A felon who possesses a firearm normally faces a maximum penalty of ten years' imprisonment, 18 U.S.C. § 924(a)(2), and three years' supervised release, 18 U.S.C. § 3583(b)(2). However, if the felon possesses the firearm after having sustained three prior convictions "for a violent felony or serious drug offense, or both," the ACCA requires a 15 year minimum sentence, 18 U.S.C. § 924(e)(1), and increases the maximum supervised release term to 5 years, 18 U.S.C. § 3583(b)(1). The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B).[3]

Two of the three prior offenses used to support Petitioner's armed career criminal enhancement were New Jersey convictions for third-degree burglary. At the time that Petitioner committed the offenses, New Jersey defined the offense as follows:

---

[3] In *Johnson*, the Supreme Court held "that imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. *Johnson* did not automatically invalidate all ACCA sentences, however, emphasizing that its holding "d[id] not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Id.*; *see also United States v. Kemmerling*, 612 F. App'x 373, 375 (6th Cir. 2015) (explicitly finding that *Johnson* did not affect the ACCAs use-of-physical-force clause). Thus, under *Johnson*, an ACCA sentence only raises due process concerns—and is thus invalid—if it was necessarily based on predicate violent felonies that only qualified as such under the ACCA's residual clause. *Compare United States v. Ozier*, 796 F.3d 597, 603 (6th Cir. 2015) (finding district court did not err by categorizing defendant as an armed career criminal where all three predicate offenses qualified under the enumerated-offense and use-of-physical-force clauses of the ACCA), *with United States v. Bell*, 612 F. App'x 378, 379–380 (6th Cir. 2015) (finding *Johnson* precluded defendant from being sentenced as an armed career criminal because one of her three predicate offenses, aggravated assault, failed to qualify under the enumerated-offense and use-of-physical force clauses). Here, the Court relied on the enumerated offense clause, not residual clause invalidated in *Johnson*, to categorize Petitioner as an armed career criminal [Doc. 46].

> A person is guilty of burglary if, with purpose to commit an offense therein he:
>
> (1) Enters a research facility, structure, or a separately secured or occupied portion thereof unless the structure was at the time open to the public or the actor is licensed or privileged to enter; or
>
> (2) Surreptitiously remains in a research facility, structure, or a separately secured or occupied portion thereof knowing that he is not licensed or privileged to do so.

N.J. Stat. Ann. § 2C-18-2 (1999). The provision defined "structure" as "any building, room, ship, vessel, car, vehicle or airplane, and also . . . any place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." N.J. Stat. Ann. § 2C-18-1. At least one of the prior convictions used to enhance Petitioner's sentence involved the breaking and entering of such a structure [Doc. 56-1].

To determine whether a particular offense qualifies as a violent felony under § 924(e), courts must first identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). They do so by employing a "categorical approach," under which courts look "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283 (internal quotations omitted). If violation of the statute invariably involves the use, attempted use, or threatened use of violent force or falls within the generic definitions of burglary, arson, or extortion, then the conviction categorically qualifies as a violent felony and the court's task is complete. It is only when the statute criminalizes conduct in excess of that covered by the use-of-physical-force and enumerated-offense clauses, that courts must determine whether the statute is divisible or indivisible. A divisible statute is one that comprises multiple, alternative version of the crime. *Id.* at 2281. When faced with a divisible statute, courts resort to the "modified categorical approach," consulting "a limited class of documents, such as indictments and jury instructions, to

determine which alternative [set of elements] formed the basis of the defendant's prior conviction." *Id.* An indivisible statute is one that contains a single crime, set of elements. *Mathis*, 136 S. Ct. at 2249. Because the categorical approach is concerned with elements and not the "facts underlying [the] conviction," *Descamps*, 133 S. Ct. at 2285, it is important that courts distinguish between alterative elements—divisible provisions to which the modified categorical approach can be applied—and alternative means for satisfying a single element—indivisible provisions to which it cannot. *Mathis*, 136 S. Ct. at 2253–54. Convictions under an overly broad, indivisible provision are incapable of serving as predicate offenses under the ACCA.

To determine whether a criminal statute contains alternative elements or alternative means of satisfying a single element, courts must consider: (1) the text of the statute; (2) any state court decisions interpreting that statute; and (3) where "state law fails to provide clear answers, . . . the record of a prior conviction," i.e., charging documents and jury instructions, for the "limited purpose" of distinguishing between means and elements. *Id.* at 2256–57. With regard to the third factor, the Supreme Court has provided the following hypothetical:

> Suppose, for example, that one count of an indictment and correlative jury instructions . . . use a single umbrella term like "premises" . . . the record would then reveal what the prosecutor has to (and does not have to) demonstrate to prevail. Conversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime.

*Id.* at 2257. Applying the foregoing analysis to New Jersey Statute Annotated § 2C-18-2 (1999) leads the Court to conclude that the provision contains three alternative locational elements—research facility, structure, and separately secured or occupied portion thereof, each of which constitutes a separate form of third-degree burglary. While the Court previously treated the second variant—burglary of a structure—as further divisible [Doc. 46], the *Mathis* decision

6

makes clear that that approach was mistaken. Petitioner's indictment only required that the state prove the breaking and entering of a "structure" [*See* 56-1 (charging Petitioner with burglarizing a "structure")]. Because the jury was not required to agree on the type of structure burglarized, only the indivisible umbrella term, element "structure" in New Jersey Statute Annotated § 2C-18-2—not the various locational examples contained in New Jersey Statute Annotated § 2C-18-1—is capable of categorization and examination under the categorical approach.

Because the indivisible offense of conviction encompasses more conduct that generic burglary, *see Taylor v. United States*, 495 U.S. 575, 599 (1990) (defining generic burglary as any conviction, "regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime"), and is capable of commission without the use of violent physical force, *see Untied States v. Barnett*, 540 F. App'x 532, 536–37 (6th Cir. 2013) (citing *Descamps* and explaining a statute only meets the first subcategory of violent felony under the ACCA where violations categorically require the use or attempted use of violent physical force), the Court finds that it erred when it relied on those convictions to categorize Petitioner as an armed career criminal.

Without the prior third-degree burglary convictions, Petitioner does not have enough predicate offenses to qualify as an armed career criminal. As such, his sentence—156 month term of imprisonment and five years' supervised release [Doc. 48]—exceeds the maximum authorized sentence for a non-ACCA offender under § 922(g)(1) by 36 months' incarceration and two years' supervised release. *See* 18 U.S.C. § 924(a)(1)(D)(2) ("Whoever knowingly violates subsection . . . (g) . . . of section 922 shall be . . . imprisoned not more than 10 years.").

Where a § 2255 claim has merit, district courts have the discretion to choose between discharging the petitioner, resentencing the petitioner, correcting the petitioner's sentence, or

7

granting the petitioner a new trial. 28 U.S.C. § 2255(b). For purposes of the current case, the Court finds correction of Petitioner's sentence to be the most appropriate form of relief. *United States v. Torres-Otero*, 232 F.3d 24, 30 (1st Cir. 2000) ("[I]n cases were the sentence (but not the conviction) is infirm, only the 'resentenc[ing]' or 'correct[ing] the sentence' options are open to the district court, since a prisoner should never be 'discharge[d]' or 'grant[ed] a new trial' based solely on a defective sentence.").

## IV. CONCLUSION

Petitioner has already served 119 months in prison and earned approximately 16 months of good-time credit [Doc. 56 pp. 7–8], a total exceeding the ten-year custodial maximum applicable to him post-*Mathis*. As a result, his motion [Doc. 51] will be **GRANTED** and his term of imprisonment will be reduced to a "time served" sentence. The order will take effect 10 days from its entry so as to give the Bureau of Prisons time to process Petitioner's release. Further, the judgment dated August 21, 2007 [Doc. 48] will be **AMENDED** to reflect a term of supervised release of three years. The Clerk's Office will be **DIRECTED** to prepare an amended judgment in accordance herewith.

**ORDER ACCORDINGLY.**

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE